# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin L. Coleman, | Case No. 15-cv-1856 (SRN/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| Charles E. Samuels, Jr., | |
| Respondent. | |

Kevin L. Coleman, 20855-014, FPC-Yankton, PO Box 700, Yankton, SD 57078 (*pro se* Petitioner);[1] and

David W. Fuller, Assistant United States Attorney, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

This matter is before the Court, U.S. Magistrate Judge Tony N. Leung, on a petition pursuant to 28 U.S.C. § 2241 for writ of habeas corpus, (ECF No. 1), Petitioner's Leave to Amend Petition for Writ of Habeas Corpus, (ECF No. 12), and Respondent's Response to Petition and Amended Petition for Writ of Habeas Corpus, (ECF No. 14). This action has been referred to the undersigned magistrate judge for report and recommendation to the Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court will recommend that the petition be dismissed.

---

[1] At the time of filing, Petitioner was incarcerated at FPC-Duluth, PO Box 1000, Duluth, MN 55814, but the Bureau of Prisons now lists Petitioner at the above address. This move was contemplated by the parties in their filings.

I.  **BACKGROUND**

Petitioner, incarcerated at the Federal Prison Camp in Duluth, Minnesota at the time this Petition's filing, is currently incarcerated at the Federal Prison Camp in Yankton, South Dakota. (Decl. of Roger Pelawa, at ¶¶ 4, 14, ECF No. 16). Petitioner is serving a 70-month sentence for wire fraud and tax evasion after he was convicted in the United States District Court for the District of Connecticut. (Pelawa Decl., at ¶ 4; Decl. of Dr. Seretha Eiland, at ¶ 4, ECF No. 17). Petitioner has a projected release date of October 8, 2017 via good conduct time release. (Pelawa Decl., at ¶ 4).

   A.  **Residential Drug Abuse Program Removal**

The Bureau of Prisons ("BOP") offers residential drug abuse programs ("RDAP") to prisoners who volunteer for treatment and have a diagnosable and verifiable substance abuse disorder. 28 C.F.R. §§ 550.51, 550.53; *see* 18 U.S.C. § 3621(e)(1)(C). The BOP has discretion in determining which prisoners are eligible to participate in RDAPs. 18 U.S.C. § 3621(e)(5)(B). To this extent, the BOP has published procedures which inmates must follow to apply for RDAP admission, rules for RDAP participants, and consequences for rule violations. (Eiland Decl., at Ex. A).

Petitioner qualified for admission into FPC-Duluth's RDAP and was placed on the wait list. (Eiland Decl., at ¶ 8). On December 31, 2012, Petitioner was moved to the RDAP's housing unit while he was on the wait list, and worked as a Psychology Clerk. (Eiland Decl., at ¶ 8). On February 27, 2013, Petitioner was removed from the wait list for engaging in inappropriate manipulative behavior, thereby violating RDAP rules. (Eiland Decl., at ¶ 9, Ex. D). Petitioner was also removed from his job as a Psychology

2

Clerk. (Eiland Decl., at Ex. D). Petitioner re-applied to the RDAP on May 30, 2014, and was re-admitted and placed again on the wait list. (Eiland Decl., at ¶ 10, Ex. D). When Petitioner was scheduled to transfer to the RDAP, however, Petitioner refused to move or to participate in the RDAP at FCP-Duluth. (Eiland Decl., at ¶ 11, Ex. D; ECF No. 20, at ¶ 2).

### B. Transfer from FPC-Duluth to FPC-Yankton

During his incarceration at FPC-Duluth, Petitioner sought transfer to the Satellite Prison Camp in Leavenworth, Kansas to be closer to his elderly mother. (Pelawa Decl., at ¶ 12). On April 24, 2015, FPC-Duluth recommended Petitioner be transferred to SPC-Leavenworth or "any minimum security facility near his mother in Kansas City, Missouri." (Pelawa Decl., at ¶ 13, Ex. B). The BOP denied Petitioner's transfer due to prisoner overcapacity at SPC-Leavenworth, but did designate Petitioner for transfer to FPC-Yankton. (Pelawa Decl., at ¶ 14). Petitioner's transfer to FPC-Yankton was scheduled for July 14, 2015. (Petitioner's Aff., at ¶ 1, ECF No. 13).

### C. Petitioner's Administrative Complaints

Prisoners may voice complaints through the BOP's administrative remedy program. (Decl. of Shannon Boldt, at ¶ 6). An inmate must first "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue." 28 C.F.R. § 542.13(a). If an inmate is not satisfied with the informal response, he must file a BP-9 within 20 days of the triggering event. 28 C.F.R. § 542.14. An inmate may appeal the decision of the Warden by submitting a BP-10 to the Regional Director, and, if still dissatisfied, by submitting a BP-11 to the General Counsel. 28 C.F.R. § 542.15. An

inmate has not exhausted administrative remedies until a response has been received from the General Counsel or a response is not received within the allotted time. 28 C.F.R. §§ 542.15, 542.18. "If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." 28 C.F.R. § 542.14(d)(1). If the Regional Director does not agree that the Request is sensitive, the inmate is advised in writing of that determination and advised to pursue the request locally. *Id.*

Petitioner attempted to file Administrative Remedy 800112-R1, dated October 27, 2014, directly at the regional level, seeking a transfer to SPC-Leavenworth due to his removal from the RDAP. (Boldt Decl., at ¶ 16, Exs. B, C; ECF No. 4, at Ex. A). Petitioner characterizes the filing as "an attempt to report actions on the part of staff members of the Federal Prison Camp in Duluth, Minnesota which constituted harassment, discrimination and disparity against Petitioner." (ECF No. 2, at 1). Petitioner himself describes his complaint as a "simple complaint against a psychologist who made a highly inappropriate call and with whom two of her associates poorly chose to support." (ECF No. 2, at 4). Instead of following BOP procedure, however, Petitioner filed his claim directly at the regional level "in the hopes that the matter could be looked at objectively by a party not as closely connected to the accused staff and also handle Petitioner's remedy with a modicum of discretion." (ECF No. 2, at 1). AR 800112-R1 was rejected because it was not a sensitive issue that could be raised in the first instance

at the regional level, and needed to be filed via regular procedures. (Boldt Decl., at ¶ 16, Exs. B, C; ECF No. 4, at Ex. B).

Petitioner then completed an informal resolution form on November 25, 2014. (ECF No. 4, at Ex. C). Petitioner complained again of disparity, discrimination, and harassment. (ECF No. 4, at Ex. C). Petitioner requested a transfer to SPC-Leavenworth to complete the RDAP and be closer to family as a way to resolve the alleged disparity, discrimination, and harassment. (ECF No. 4, at Ex. C). Petitioner's complaint was investigated, and it was found that the staff whom Petitioner accused never threatened Petitioner in any way and that Petitioner is set to participate in the RDAP again at FCP-Duluth. (ECF No. 4, at Ex. C). While Petitioner includes an alleged BP-9 with his filings, (ECF No. 4, at Ex. D; Boldt Decl., at ¶ 18, Exs. B, D), there is no record he filed it with the Warden at FCP-Duluth. (Boldt Decl., at ¶ 17). Instead, Petitioner submitted his request to the regional office and attached the BP-9 to the appeal. (Boldt Decl., at ¶ 17, Exs. B, D; ECF No. 4, at Ex. E). In fact, Petitioner's regional appeal states he filed the "BP-10 directly with Region" because of his grievances against FPC-Duluth staff. (ECF No. 4, at Ex. E).[2] Like AR 800112-R1, AR 807344-R1 was rejected because it was not a sensitive issue that could be raised in the first instance at the regional level, and needed to be filed via regular procedures. (Boldt Decl., at ¶ 17, Exs. B, D; ECF No. 4, at Ex. E). Petitioner filed an appeal with the central office. (Boldt Decl., at ¶ 18, Exs. B, D; ECF No. 4, at Ex. G). The appeal was rejected as not sensitive and for failure to file a BP-9 at

---

[2] But in another filing, Petitioner avers that he submitted the BP-10 because he received no reply from the BP-9 submission in a time period to his liking. (ECF No. 4, at Ex. G).

5

the institutional level. (Boldt Decl., at ¶ 18, Exs. B, D; ECF No. 3, at Attach. 1). Petitioner has not attempted to re-file AR 807344 at any level. (Boldt Decl., at ¶ 18).

### D.  Petition for Habeas Corpus

Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2241, asking this Court to "intervene immediately in the matter of the administrative remedy appeal attached hereto." (ECF No. 1). Petitioner seeks court intervention that would direct the BOP to conduct a complete and comprehensive investigation of Petitioner's "complaint of harassment, disparity and discrimination." (ECF No. 1, at 1). Petitioner also seeks an order remanding him to a "Residential Re-Entry . . . or Halfway House for the remainder of his sentence." (ECF No. 1, at 1). Essentially, Petitioner asserts Respondent aggrieved him by removing him from the RDAP, failing to respond to his administrative appeals, and for failing to transfer Petitioner to a facility closer to his family and where he may participate in a RDAP. (ECF No. 2). Petitioner then filed what he entitled "Leave to Amend Petition for Writ of Habeas Corpus." (ECF No. 12).[3] In this filing Petitioner seeks to incorporated additional statements related to his transfer to FPC-Yankton. (ECF Nos. 12, 13).

Respondent seeks dismissal of the petition—and its amendments—because Petitioner failed to exhaust administrative remedies and for lack of jurisdiction to review the underlying BOP decisions. (ECF No. 14). Petitioner's reply re-iterates his

---

[3] Respondent responds to Petitioner's filings as a whole, including his habeas petition and his amended documents. Because the parties are already operating under the amended petition and the new filings do not materially change the arguments made or relief sought, the Court finds it proper to grant summarily Petitioner's motion seeking to amend his petition. (ECF No. 12).

dissatisfaction with the administrative remedy process and his disagreement with how the BOP's discretionary decisions may be reviewed by courts. (ECF Nos. 19, 20).

## II. ANALYSIS

The basic purpose of habeas corpus is to allow a prisoner to attack the legality of his detention. *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973). "A motion under 28 U.S.C. § 2241 challenges the *execution* of a sentence while a motion under 28 U.S.C. § 2255 challenges the *imposition* of a sentence." *Deleston v. Wilson*, No. 13-cv-2733 (JNE/SER), 2014 WL 3384680, at *3 (D. Minn. July 10, 2014) (emphasis in original); *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996). Here, Petitioner is contesting the BOP's decision to remove him from the RDAP program which, if successfully completed, would shorten his sentence. *See Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) (where petitioner seeks remedy that would result in an earlier release from prison, habeas corpus is the proper remedy). Further, the relief sought by Petitioner is release to a residential re-entry or halfway house. Thus, the Court finds § 2241 to be the proper vehicle for Petitioner's complaints.

### A. Petitioner Failed to Exhaust Administrative Remedies

"A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP." *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) (citing *United States v. Chappel*, 208 F.3d 1069 (8th Cir.

7

2000) (per curiam)). When a petitioner has not exhausted his administrative remedies, his petition may be dismissed without prejudice so that he may be allowed the opportunity to complete the administrative processes afforded by the BOP. *Mathena*, 577 F.3d at 946 (citation omitted).

Exhaustion of remedies as a prerequisite to filing § 2241 petitions is a judicially-created barrier, not jurisdictional in nature. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007).Where an "exhaustion requirement is judicially imposed, it can be waived." *United States v. Dico, Inc.*, 136 F.3d 572, 576 (8th Cir. 1998). "The exhaustion requirement is designed to 'protect administrative agency authority and promote judicial efficiency,' and those are the policies a court must keep in mind in making the waiver decision. *Id.* at 576 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). This is because an "administrative agency should have the opportunity to apply its expertise, exercise the discretion delegated to it by Congress, and correct its own alleged errors in the first instance, with the possibility of avoiding resort to the courts altogether." *Dico*, 136 F.3d at 576.

While Petitioner puts forth conflicting views regarding his exhaustion of remedies,[4] the Court finds the record clear: the BOP has never reviewed the merits of Petitioner's grievances because Petitioner has continuously failed to correct procedural

---

[4] First, Petitioner states he "need not exhaust administrative remedies" because he is challenging individual actions of BOP staff members "under the color of administrative authority" that violated his due process and equal protection rights. (ECF No. 1, at 2). Second, Petitioner states he has exhausted all administrative remedies and that, at each step of the administrative process, his "efforts have been fraught with complete futility as not one administrative level of this complaint has produced a review or response on record that even acknowledges having looked into the veracity of Petitioner's underlying complaint." (ECF No. 1, at 2). Rather, Petitioner asserts, his filings are "repeatedly rejected and shuffled for groundless reasons of form." (ECF No. 1, at 2).

8

defects in his administrative remedies despite being notified of such defects. Thus, Petitioner's failure to properly submit his administrative remedies has deprived the BOP of the opportunity to "apply its expertise, exercise the discretion delegated to it by Congress, and correct its own alleged errors in the first instance." *Id.* Instead, Petitioner does little more than expound his frustration with a process that has not considered the merits of his claim because he refuses to follow the rules of the process that would consider the merits of his claim. The Court finds no reason to waive the exhaustion requirement. Therefore, the Court recommends that the petition be dismissed without prejudice because Petitioner has failed to exhaust administrative remedies.

### B.  RDAP and Transfer Decisions are not Reviewable

Even if this Court were to conclude that Petitioner has exhausted his administrative remedies, the brunt of the BOP decisions that have aggrieved Petitioner are not subject to judicial review under the Administrative Procedures Act. 18 U.S.C. § 3625; *see Santiago-Lebron v. Florida Parole Comm'n*, 767 F.Supp.2d 1340, 1351–52 (S.D. Fla. 2011) (Prisoner's argument that the BOP arbitrarily and capriciously concluded he was ineligible for RDAP was not subject to judicial review under APA, where prisoner failed to present any cognizable constitutional claim, and BOP's interpretation of the statute was not contrary to well-settled law); *Bernard v. Roal*, 716 F.Supp.2d 354, 360–61 (S.D.N.Y. 2010) (same for residential re-entry center under RDAP); *Lyle v. Sivley*, 805 F.Supp. 755, 757–60 (D. Ariz. 1992) (BOP's decisions to grant or deny pre-release treatment are committed to agency discretion and not subject to judicial review except for colorable constitutional claims or claims that agency exceeded its statutory

9

authority); s*ee also Anderson v. Fed. Bureau of Prisons*, 506 F.Supp.2d 28, 29–30 (D.D.C. 2007) (APA does not provide basis for federal prisoner's challenge to federal BOP's termination of prisoner from his work program). Furthermore, Petitioner has not sufficiently alleged facts that give him a cognizable constitutional claim, nor is it likely that he can. *See Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011) ("A prisoner has no constitutional right to participate in RDAP, *see Reeb v. Thomas*, 636 F.3d 1224, 1228 n.4 (9th Cir. 2011), and similarly, a prisoner has no liberty interest in discretionary early release for completion of RDAP, *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998)."). Petitioner asserts he received unfair treatment due to "harassment, discrimination and disparity," but fails to allege any facts that he was treated differently from others similarly situated to him. *Reeb*, 636 F.3d at 1228 n.4. These bald, bare assertions are insufficient to allege a constitutional violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaints fail if supported only by "naked assertions devoid of further factual enhancement."). The case law is clear that absent a showing that the BOP's decision created a cognizable constitutional claim, Petitioner may not seek judicial review of the BOP's decision to remove him from the RDAP program, to terminate his prison job, or grant his transfer request. Therefore, the Court finds this bolsters its recommendation to dismiss the petition.[5]

---

[5] While Petitioner's claims regarding RDAP placement are not reviewable and could be dismissed with prejudice for lack of jurisdiction, Petitioner's complaints are intertwined with other matters that *may* be reviewable by a court following exhaustion of administrative remedies. Given the intertwined nature of Petitioner's complaints, the Court finds it prudent to dismiss all claims without prejudice.

### III.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Leave to Amend Petition for Writ of Habeas Corpus, (ECF No. 12), be **GRANTED** and the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DISMISSED WITHOUT PREJUDICE**.

Date:  January 20, 2016                          *s/ Tony N. Leung*
                                                          Tony N. Leung
                                                          United States Magistrate Judge
                                                          District of Minnesota

                                                          *Coleman v. Samuels*
                                                          File No. 15-cv-1856 (SRN/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.